## APPEAL OF INDEX NOTION CO.

Docket No. 1023.    Submitted March 17, 1925.    Decided November 20, 1925.

> The taxpayer kept its accounts upon a single-entry set of books and computed its net income and made its returns therefrom. An examining revenue agent attempted to adjust the books of account of the taxpayer to a double-entry basis, in the course of which adjustment he determined a net income differing from that shown by the books of the taxpayer. The Commissioner adopted the method of the revenue agent and determined a deficiency. *Held,* on the basis of discrepancies appearing on the face of the report of the revenue agent, that the taxpayer has established an inaccuracy in the determination of the Commissioner, and, there being no other evidence before the Board, so much of the deficiency so determined as depends upon such inaccuracy is disallowed.

*Camden R. McAtee, Esq.,* for the taxpayer.
*B. G. Simpich, Esq.,* for the Commissioner.

Before JAMES, STERNHAGEN, TRAMMELL, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits taxes for the years 1917, 1918, and 1919, in the amounts, respectively, of $4,927.03, $3,430.69, and $504.25.

### FINDINGS OF FACT.

Taxpayer is an Indiana corporation, with its principal office at Sullivan. It is engaged in the retail notion and general merchandise business. Its operations are carried on through chain stores located in the States of Illinois and Indiana.

From the inception of the business and down through the years under consideration, the single-entry method of bookkeeping was employed in maintaining the accounts upon an accrual basis. In March, 1920, a certified public accountant was employed to install a system of accounting, contemplating the double-entry method of bookkeeping, as of January 1, 1920. An inventory of all the assets and liabilities of the business was made as of January 1, 1920, and new books of account were opened and thereafter maintained by the double-entry method.

The returns of this taxpayer for the years 1917, 1918, and 1919, were rendered on the accrual basis. The net income was determined by the rules of accounting peculiar to the method employed in keeping the books; that is to say, the assets and liabilities at the beginning and close of each year were inventoried and the increase in the net worth of the business at the close of the year over the net worth at the beginning of the year, plus all unallowable deductions, was reported as the taxable net income of the year.

The net income reported in the returns was in each instance supported by detailed schedules to show all items of income and expense entering into computation of taxable net income. These schedules were prepared from memoranda maintained and preserved by the taxpayer but not incorporated in the books of account.

In 1922, taxpayer's books of account were examined by a revenue agent who attempted to verify the items of income and expense shown by the detailed schedules accompanying the taxpayer's returns. Several adjustments in the net income and invested capital reported in the returns were recommended by that officer and accepted by the Commissioner. Those adjustments are responsible for a major portion of the deficiency which the Commissioner proposes to assert. The adjustments recommended by the agent and accepted by the Commissioner are set forth below in chronological order:

(A) Net income reported in return for 1917 increased as follows:
    (a) Reduction in opening inventory _____ $3, 076. 30
    (b) Reduction in purchases _____ 3, 163. 84
    (c) Cash discount earned _____ 3, 468. 15

       Total increase _____ 9, 708. 29

(B) Invested capital reported in 1917 return decreased as follows:
    (a) Reduction in earned surplus on account of overstatement of inventory at Jan. 1, 1917, see (A) (a) above under income adjustments _____ $3, 076. 30
    (b) Reduction in earned surplus on account of notes payable outstanding and not shown in balance sheet of Jan. 1, 1917, accompanying return _____ 8, 500. 00
    (c) Reduction in earned surplus at Jan. 1, 1917, by setting up a liability account denominated "Adj. Payable" in the sum of _____ 976. 09

       Total reduction _____ 12, 552. 39

As a result of the above adjustments, the revenue agent has converted an earned surplus of $10,063.69 at January 1, 1917, according to taxpayer's books at that date, into a deficit of $2,488.70.

(C) Net income reported in return for 1918 increased as follows:
    (a) Cash discount omitted _____ $4, 564. 10

(D) Invested capital reported in 1918 return decreased as follows:
    (a) Reduction in earned surplus at January 1, 1918, by setting up a liability account denominated "Adj. Payable" in the sum of _____ 4, 419.10

No change was made in the taxable income as reported in the return for the year 1919. Invested capital for the year 1919 was reduced by the amount of the deficiencies in income and profits taxes found due for the years 1917 and 1918.

DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on 15 days' notice, under Rule 50.

OPINION.

JAMES: In its petition taxpayer alleges that the deficiency determined by the Commissioner is predicated upon the following errors:

(a) That the Commissioner erred in increasing the net income as reported in the amended return for 1917 by the sum of $9,708.29, made up as follows:

| | |
|---|---|
| Reduction in opening inventory | $3, 076. 30 |
| Reduction in purchases | 3, 163. 84 |
| Cash discount earned | 3, 468. 15 |
| | 9, 708. 29 |

(b) That the Commissioner erred in increasing the net income as reported in the amended return for 1918 by the sum of $4,564.10, on account of cash discounts earned during the year.

(c) That the Commissioner erred in reducing the invested capital of the years 1918 and 1919, respectively, by the amounts of the deficiencies alleged to be due for the years 1917 and 1918.

The taxpayer further alleges that these errors are the natural consequence of the Commissioner's action in attempting to determine the net income of each of the years under consideration under the double-entry method of bookkeeping from books which were maintained by the single-entry method.

The evidence in this case discloses that the accounts of this taxpayer were maintained by the single-entry method of bookkeeping, but that memoranda and data outside of the books of account were also maintained, from which it was practicable for the taxpayer to furnish detailed information relating to all items of income and expense entering into the computation of taxable net income.

On the face of the returns of each year, and in the supporting schedules, there is no lack of detail of the various items of income and expense entering into the computation of the taxable net income; and the whole is supported by balance sheets purporting to show the financial condition of the business at the opening and close of each year, accompanied by a reconciliation of surplus.

Where books of account are maintained by the single-entry method of bookkeeping, the determination of net income is made by comparison of the net worth at the close of the year with the net worth

at the beginning of the year. The accuracy of the determination depends upon the correctness of the inventories of assets and liabilities at both dates. If the inventories are correct in all respects, then the increase in the net worth of the business plus any unallowable deductions must represent the correct taxable net income.

We have in evidence in this appeal two sets of balance sheets as of the close of each of the years 1916 to 1919, inclusive. Both sets were prepared by the taxpayer, one of which was attached to the returns as filed, while the other was submitted in evidence as taxpayer's Exhibit No. 1. The two sets are so dissimilar in some respects that, upon comparison, one would hardly suspect that they both emanated from the same business. Their differences have not been accounted for by any evidence whatever. Which of the two sets, if either, correctly reflects the financial condition of the taxpayer at the close of the years 1916 to 1919, inclusive, we must confess we are unable to determine. The mysterious thing about both sets is that, notwithstanding their dissimilarity, both show a surplus in similar amounts at the close of 1919. It is readily apparent that under such circumstances we can not approve the taxpayer's computations of net income for the several years under consideration, which are based upon a comparison of net worth at the close of each year. ·

On the other hand, we are more reluctant to accept the revenue agent's computations of net income for the years under consideration which have been approved and adopted by the Commissioner. We are not impressed with the accounting gymnastics which he has resorted to in his computations and seriously doubt the correctness of the results obtained thereby. He attempted to verify the items of income and expense appearing on the returns of the several years and found what appeared to him to be discrepancies. These we have outlined in our findings of fact. He accordingly adjusted the net income of each year to take care of these discrepancies, and then, by using the surplus at December 31, 1919, as a starting point, and by working back through a series of additions and subtractions, he established what would have been the surplus at December 31, 1916, if the correct net income of the intervening years was actually as he had computed it. Of course, the net income of each year as he has computed it fits in very nicely with the whole reconciliation of surplus; it could not be otherwise. But the great difficulty with the whole process is that he has not proven the accuracy of the surplus at December 31, 1916, as thus determined, thereby demonstrating the correctness of his computations. What is more, the language used

in his reports and the methods resorted to betray the fact that the discrepancies which he sought to correct existed in his mind only as vague probabilities.

We find further, upon examination of the balance sheets constructed by the revenue agent, evidence of the error of his methods. To make them balance, he found it necessary to include an adjustment account on the liability side of the balance sheets at the close of 1916 and 1917 in the amounts of $976.09 and $4,419.10, respectively, to take care of amounts otherwise unaccounted for. Had these amounts been permitted to remain in the surplus account, obviously a reconciliation of surplus would have been impossible by using the net income as he determined it for each of the years under consideration.

Forced balance sheets are worthless for any purpose, more especially where they must be used as the basis for the determination of net income under the single-entry method of bookkeeping. We can not sanction the assertion of a deficiency determined under such circumstances. *Appeal of Bruce & Human Drug Co.*, 1 B. T. A. 342.

The additions to net income and the deductions from invested capital made by the Commissioner, as set forth in the findings of fact, are disallowed. Upon the last point in this appeal, our decision must be for the taxpayer. *Appeal of Guarantee Construction Co.*, 2 B. T. A. 1145.