## COMMISSIONER OF INTERNAL REVENUE v. VANDEGRIFT REALTY & INVESTMENT CO.
### No. 7918.

Circuit Court of Appeals, Ninth Circuit.
March 2, 1936.

Frank J. Wideman, Asst. Atty. Gen., and J. Louis Monarch, Louise Foster, and Arnold Raum, Sp. Assts. to the Atty. Gen., for petitioner.

Thomas R. Dempsey and A. Calder Mackay, both of Los Angeles, Cal., for respondent.

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

This cause comes to us upon the petition of Guy Helvering, Commissioner of Internal Revenue, seeking review of orders of the Board of Tax Appeals, involving the determination by that Board of the tax liability of respondent for the years 1927–1930 inclusive. Respondent is a voluntary trust, created in the manner and for the purposes hereinafter stated. Whether, in the tax years in question, this trust was a corporation, within the meaning of the Revenue Acts and regulations thereunder, is the question to be decided in this case.

The statutes and regulations involved in the instant case are as follows:

Revenue Act of .1926, c. 27, 44 Stat. 9:

"Sec. 2. (a) When used in this Act [title]—* * *

"(2) The term 'corporation' includes associations, joint-stock companies, and insurance companies." U.S.C., title 26, § 1696, 26 U.S.C.A. § 1696 and note.

Section 701 (a) (2) of the Revenue Act of 1928, c. 852, 45 Stat. 791 (U.S.C., Title 26, § 1696 [26 U.S.C.A. § 1696 and note]), is identical with the provisions of section 2 (a) (2) of the Revenue Act of 1926, supra.

Treasury Regulations 69, promulgated under the Revenue Act of 1926:

"Art. 1502. *Association.*—Associations and joint stock companies include associations, common law trusts, and organizations by whatever name known, which act or do business in an organized capacity, whether created under and pursuant to State laws, agreements, declarations of trust, or otherwise, the net income of which, if any, is distributed or distributable among the shareholders on the basis of the capital stock which each holds, or, where there is no capital stock, on the basis of the proportionate share of capital stock, which each has or has invested in the business or property of the organization. * * *

"Art. 1504. *Association distinguished from trust.*—Where trustees merely hold property for the collection of the income and its distribution among the beneficiaries of the trust, and are not engaged, either by themselves or in connection with the beneficiaries in the carrying on of any business, and the beneficiaries have no control over the trust, although their consent may be required for the filling of a vacancy among the trustees or for a modification of the terms of the trust, no association exists, and the trust and the beneficiaries thereof will be subject to tax as provided by section 219 and by articles 341–347. If, however, the beneficiaries have positive control over the trust, whether through the right periodically to elect trustees or otherwise, an association exists within the meaning of section 2. Even in the absence of any control by the beneficiaries, where the trustees are not restricted to the mere collection of funds and their payment to the beneficiaries, but are associated together with similar or greater powers than the directors in a corporation for the purpose of carrying on some business enterprise, the trust is an association within the meaning of the statute."

Articles 1312 and 1314 of Treasury Regulations 74, promulgated under the Revenue Act of 1928, contain the same provisions as the above articles.

The Board of Tax Appeals found, inter alia, as facts:

1. That a trust was created by an instrument in writing whereby certain property was conveyed to three trustees; that the trust instrument provides that the trust shall continue until the death of the last surviving cestui que trust.

2. That the settlers retained no control over the trust property.

3. That the beneficiaries have no interest except the right to require the trustees to manage the property and to account for all income in proportion to their respective ownership of interest in the corpus; that the beneficial interest shall be represented by shares which are fully transferable.

4. The trustees were given extensive powers relating to the carrying on of business, which included the power to purchase, sell, lease, manage, improve, and develop the real estate of the trust. They had power to make contracts, to carry on a general contracting and construction business, to act as agents, to loan and borrow money, etc. In addition, the trustees were given the right to keep books, were required to audit them once a year and were in general given power to perform all the duties incidental to carrying on a business.

5. The trust deed provided that "no form of partnership, agency or association is hereby created, either between the trustees, between the trustees and certificate holders, or between the certificate holders, and no assessment shall ever be levied upon certificate holders." The trustees were self-perpetuating with power to fill vacancies, and were not subject to the control of the beneficiaries.

6. Of the income of the trust 90 per cent. or more was derived from the long-term lease held by it. Some income was received from the trust's interest in the shoe business until the liquidation of that business in 1927 and from the Redondo Beach property.

The original intention of the father who transferred all of the property to the trust was to create an agency in the nature of a spendthrift trust so as to assure the children of an income without opportunity to dissipate the principal and to place the property beyond their control. The children contributed no property to the trust. Certificates of interest were issued to each of the beneficiaries.

8. That the primary purpose of the principal grantor was to provide an assured income for his children by assignment of a long-term lease and to place the property beyond their control.

9. From 1924 through 1926 the trust was engaged in business to such an extent that it cannot be said that it was merely incidental. It owned a substantial interest in a shoe business.

10. After 1926, a different situation obtained. The shoe business had been liquidated; the Redondo properties were held only because they could not be sold; and practically all of the income of the trust was from the long-term lease. In connection with the lease, the respondent had no duty or obligation other than to receive the rent checks and make distribution and accounting therefor. The lessee assumed all maintenance and operation. Respondent was not engaged in business during these years.

The Board of Tax Appeals determined that because of the activity of the trust in the years 1924, 1925, and 1926, it was taxable as an association, but that for the years 1927–1930 inclusive, the Board determined that the trust was not so taxable.

Petitioner's assignment of error is comprehensive, but it can be reduced to its simplest form by saying that petitioner rests his case upon the claim that the Board of Tax Appeals erred in holding that during the years 1927–1930 inclusive, the trust was not engaged in business and therefore was not to be classified for tax purposes as a corporation.

The statute above referred to merely provides that the term "corporations" shall include "associations" without further definition. The Treasury Department, by the regulations above referred to has attempted to give administrative construction to the statute, but much confusion has arisen by reason of differences of opinion with respect to the construction to be given such regulations.

Generally, three tests have been found in the regulations to aid in arriving at such determination, namely: (a) Purpose; (b) actual operation; (c) form of organization.

At the outset, we are confronted by respondent's contention to the effect that, because the Board of Tax Appeals made a finding that respondent was not engaged in business during the years in question, noth-

ing is before this court properly subject to our examination.

We recognize that the question as to whether or not the trust engaged in business during a specified period is one of fact, but we hold that it is a question of law as to the activity required in order that a trust be classified for tax purposes, either as an association or a simple, inactive, or pure trust, and we hold that it is a question of law, with respect to the measure or standard by which we may determine whether or not a trust shall be taxed as a corporation, by reason of its classification as an association.

We must examine all of the findings of the Board with respect to the question as to whether or not the trust was engaged in business during the years in question. We cannot select a detached sentence, disregard the remaining findings and fairly determine this case. Applying such rule, we cannot say that the Board has held that there was an entire lack of business or activity during the years in question, but rather that the Board held that the quantum thereof was not sufficient to justify a classification of the trust as an association for tax purposes.

The findings of the Board now before us, in some respects border on flat contradiction, but obviously the record is conclusive as to some determining factors. That is to say, the trust instrument originally created an association, the trust was and is not a liquidation trust, and the association did for some years after its creation, and on an extensive scale, engage in business for profit in form and manner very much like a corporation.

The purpose for which the trust was organized must be given weight by us in arriving at a conclusion herein under the authority of Helvering v. Coleman-Gilbert Associates, 56 S.Ct. 285, 80 L.Ed. ——, decided by the Supreme Court December 16, 1935. We look to the agreement creating the trust for a definition of its purpose rather than to the statement of the parties with respect to their purpose.

Pursuant to the purpose for which the trust was created, during the years now under consideration, it received and distributed rentals from a long-term lease covering property in Los Angeles, Cal.; it received and managed properties located at Redondo Beach in California; it accumu-

lated a reserve fund for the purpose of erecting a building in case the Los Angeles building, under lease should be destroyed by fire. That fund was by the trust invested in building and loan certificates. These activities in our opinion constituted engaging in business, and that for a profit.

We must keep in mind that the record discloses that for the years 1924, 1925, and 1926 the Board found that the trust was engaged in business and was taxable as a corporation. The only activity carried on by the trust during those years which was not carried on by the trust during the years now under consideration was the operation of a shoe business which was liquidated in 1927.

With respect to the liquidation of the shoe business, it may be and is contended by respondent that the decreased activity of the trust after 1926 in fact altered its character, but under the authority of Morrissey v. Commissioner, 56 S.Ct. 289, 80 L. Ed. ——, decided by the Supreme Court December 16, 1935, we must hold in this case that such alteration does not follow.

In a recent case, Helvering v. Combs et al., 56 S.Ct. 287, 289, 80 L.Ed. ——, decided by the Supreme Court December 16, 1935, the court in substance held that "the essential features of the enterprise" were not affected by reason of the fact that the parties confined their operations to a limited number of operations.

There can hardly be a serious question as to the fact that the trust was carried on under a corporate form, but the Supreme Court indicates very clearly in Morrissey v. Commissioner, supra, that little consideration should be given to the form of organization under which the trust is operated, but rather that the true rule is that purpose and actual operation of the trust should be controlling in determining whether or not the trust shall be classified as an association for tax purposes.

In considering whether an association was created by the trust agreement herein, the fact that the beneficiaries did not exercise control is not determinative. Hecht v. Malley, 265 U.S. 144, 44 S.Ct. 462, 68 L. Ed. 949; Morrissey v. Commissioner, supra.

In Helvering v. Combs, 56 S.Ct. 287, 289, 80 L.Ed. ——, decided by the Supreme Court December 16, 1935, the court considered another of the numerous cases wherein

the instant question arises, and it stated a formula which may well guide us. "Here, through the medium of a trust, the parties secured centralized management of their enterprise, and its continuity during the trust term without termination or interruption by death or changes in the ownership of interests, and with limited liability and transferable beneficial interests evidenced by certificates. Entering into a joint undertaking they avoided the characteristic responsibilities of partners and secured advantages analogous to those which pertain to corporate organization." Measured by such rule, the respondent herein is an association.

We note respondent's contention to the effect that it was not organized for the purpose of carrying on a joint venture, and we are not unmindful of respondent's further contention that the findings of fact by the Board form some basis for such an argument, but we think the argument is not convincing, having in mind that under almost identical facts, the same Board did determine that for the years 1924, 1925 and 1926, respondent was engaged in business for profit and taxable as a corporation because determined by the Board to be an association.

Blair v. Wilson Syndicate Trust (C.C. A.) 39 F.(2d) 43 involved a trust organized for liquidation and does not support respondent's argument.

Commissioner v. Guitar Trust Estate et al. (C.C.A.) 72 F.(2d) 544, does give support to the argument of respondent, but in that case the court seems to have reached its conclusion by emphasizing the lack of control by the beneficiaries and the lack of resemblance to a corporation. We feel that by reason of the lack of emphasis therein upon the business test and upon the purpose as expressed in the written agreement creating the trust and the activities pursuant thereto, that we must disregard that case as authority herein, in the light of the rule laid down in Morrissey v. Commissioner, supra.

Applying the rules stated by the Supreme Court in the cases of Morrissey v. Commissioner, Helvering v. Coleman-Gilbert Associates, and Helvering v. Combs, supra, we must and do hold that the respondent herein is an association, and that the decision of the Board of Tax Appeals must be reversed. It is so ordered.