Herbert Mindell v. Commissioner.
Mindell v. Commissioner
Docket No. 36152.
United States Tax Court
T.C. Memo 1955-17; 1955 Tax Ct. Memo LEXIS 322; 14 T.C.M. (CCH) 65; T.C.M. (RIA) 55017; January 26, 1955
*322 Respondent determined unreported net profits from petitioner's business for each of the taxable years 1942 through 1946. No evidence was produced on behalf of petitioner relating in any way to the amount of the deficiencies determined by respondent. 1. Held, that some part of each of the deficiencies determined by respondent was due to fraud with intent to evade tax. 2. Held, further, that petitioner failed to establish that his failure to file returns in 1945 and 1946 was due to reasonable cause and not to wilful neglect. 3. Held, further, that petitioner's contention that respondent's determinations were arbitrary and therefore invalid within the rule expressed in Helvering v. Taylor, 293 U.S. 507, is not sustained by the record. J. Nathan Helfat, Esq., for petitioner. John J. Madden, Esq., and James J. Quinn, Esq., for respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: Respondent determined deficiencies and additions to tax under sections 293(b) and 291(a) of the Internal Revenue Code of 1939 as follows: Year
Kind of Tax
Deficiency
50% Penalty
25% Penalty
1942
Income tax
$ 5,742.74
$ 2,871.37
1943
Income and victory tax
16,700.83
8,350.42
1944
Income tax
88,066.93
44,033.47
1945
Income tax
70,872.24
35,436.12
$17,718.06
1946
Income tax
55,026.70
27,513.35
13,756.68
The issues involved are whether the deficiencies were due in part to fraud with intent to evade income taxes, whether delinquency penalties are due for 1945 and 1946, and whether respondent's determination of deficiencies was arbitrary and invalid. Findings of Fact Some of the facts were stipulated by the parties. Those so stipulated are found accordingly and incorporated herein by this reference. During the taxable years involved herein, 1942 through 1946, petitioner was a manufacturer and jobber of buttons trading under the name of Lehigh *324 Manufacturing Company in New York City. For the years 1942 through 1944, he filed income tax returns [1] in which he reported the following amounts of gross sales and net profits: Year
Gross Sales
Net Profit
1942
$90,658.36
$2,654.27
1943
51,292.02
2,658.91
1944
53,214.70
2,783.16
Petitioner failed to make and file an income tax return for either of the calendar years 1945 or 1946. He did file declarations of estimated tax, Form 1040-ES, for each of those years, however, in which he estimated that his tax would be $150 and $400, respectively. He also filed a tentative return for 1945 on March 15, 1946, and was granted an extension of time until May 15, 1946, to file a final return for 1945. Pursuant to his request, petitioner was also granted an extension until June 16, 1947, to file his return for the year 1946. Petitioner's total actual gross sales to customers during the years involved herein, as stipulated by the parties were as follows: Year
Gross Sales
1942
$ 98,125.91
1943
150,733.27
1944
341,965.12
1945
281,942.54
1946
319,061.01
A special agent of the *325 Internal Revenue Service made an investigation of the income tax liability of the petitioner for the calendar years 1942 through 1946. He first contacted the petitioner on August 27, 1945, who furnished him with the following books and records for the calendar years 1942, 1943 and 1944: Cash Receipts Books, Cash Disbursements Books and General Ledgers. Subsequently, petitioner addressed a letter dated January 29, 1946, to the collector of internal revenue at Brooklyn, New York, which read as follows: "Gentlemen: "It appears that certain items of income were omitted from my tax returns for the past few years. "I should like to have a complete examination of my records made in order to correct these returns. "Very truly yours," Thereafter, when the special agent again requested to see his books, petitioner advised him that he had "disposed" of them. He subsequently stated under oath on October 15, 1947, that he had disposed of them because they were not correct or complete. The petitioner did, however, furnish adding machine tapes which listed amounts of sales, together with names of customers, for the calendar years 1943 to 1946, inclusive. He also furnished bank statements, *326 cancelled checks, payroll records, and Social Security returns for the years 1945 and 1946. The total sales figures shown on the adding machine tapes were as follows: 1943
$152,537.90
1944
340,820.91
1945
281,942.54
1946
319,061.01
Petitioner stated to the investigating agents that the sales receipts which had not been included in his returns had been expended to purchase merchandise which also had not been included in his books and records or reflected in his returns. He admitted, however, that he was unable to substantiate the amount of purchases which were not reflected upon his books. He furnished the special agent with the names of alleged suppliers of such merchandise. The special agent subsequently contacted all of them but received no substantiation of petitioner's claims. The petitioner admitted under oath to the special agent that he had omitted from his income tax returns for the years 1942, 1943 and 1944, net income derived from unreported sales in an aggregate amount of $15,000 for the three years. On March 13, 1950, petitioner was indicted for income tax evasion for the calendar years 1943 and 1944. On February 9, 1951, his bail bond was forfeited *327 and a bench warrant was issued for his arrest. Petitioner understated his net income for 1942 in the return filed for that year in the amount of $16,833.44, of which $7,467.55 was attributable to failure to report profits from the sale of merchandise, and $9,365.89 to a deduction for improperly claimed payment of commissions. The amount of the deficiency determined for 1942 was not disputed at the hearing. As appears from the transcribed interview with investigating agents, dated October 15, 1947, petitioner agreed to accept as a basis for calculating cost of unreported sales the same percentage which reported purchases bore to reported sales for each of the years involved. On this basis, the excess of unreported sales over cost of unreported sales for 1943 was determined to be $33,944.89, representing 34.14568% of $99,441.25 unreported sales. On a like basis, the excess of unreported sales over cost of unreported sales for 1944 was determined to be $119,134.15, representing 41.25852% of $288,750.42 unreported sales. In his returns for 1943 and 1944, petitioner deducted labor costs of $7,951 and $12,010.45, respectively, which costs were allowed by respondent as deductions. *328 For the years 1945 and 1946, for each of which petitioner failed to file a return, respondent (lacking any basis for determining a ratio of cost of sales to unreported sales) applied the formula which had been used in 1944, the next preceding year. He therefore determined the excess of unreported sales over cost of unreported sales for 1945 to be 41.25852% of $281,942.54, or $116,325.32, and for 1946 to be a like percentage of $319,061.01, or $131,639.85. During 1945 and 1946, petitioner paid business expenses other than merchandise costs in the total amounts of $12,790.28 (including labor costs of $8,473) and $39,969.80, respectively, which were allowed by respondent. Petitioner realized net operating income for these years as follows: 1945
$103,535.04
1946
91,670.05
There is a deficiency in petitioner's income tax for each of the taxable years 1942 through 1946. Part of each such deficiency is due to fraud with intent to evade tax. Opinion The Fraud Issue On the fraud issue, the burden of proof is upon respondent. We hold that he has established by clear and convincing evidence that some part of the deficiency for each of the years in question was due *329 to fraud with intent to evade income taxes. The evidence establishes substantial understatements of gross sales and of net income for each of the years 1942 to 1944, inclusive. In 1945 and 1946, no returns were filed although taxpayer operated an active business with substantial gross and net income in each such year, and was granted extensions of time for filing returns for such years. Petitioner's books and records were admittedly incorrect and incomplete, and they were "disposed of" by petitioner during the course of the investigation of his business affairs. Adding machine tapes on which petitioner recorded accounts receivable disclosed substantially higher amounts of receipts from sales for 1943 and 1944 than were recorded by him in his books or reported in his tax returns for those years. Petitioner admitted that he had substantial unreported net income during the period 1942 through 1944. In addition, when afforded a conference by investigating agents, he offered no reasonable explanation either for his various acts and omissions which had resulted in substantial understatements in his returns for the years 1942 to 1944, inclusive, or for his failure to file returns for 1945 *330 and 1946. Petitioner was indicted in March 1950 for income tax evasion for the years 1943 and 1944. On February 9, 1951, petitioner's bail was forfeited and a bench warrant was issued for his arrest. He did not appear at the hearing of the instant case. Prior proceedings in this case disclose that in November of 1950, petitioner and his family moved to Mexico City, (see Mindell v. Commissioner, C.A. 2, 1952, 200 Fed. (2d) 38, and there is nothing to indicate that petitioner ever returned to the United States. The facts as to petitioner's indictment for income tax evasion and the forfeiture of his bail are contained in the Stipulation of Facts, but petitioner reserved the right to object to the relevancy or materiality of that part of the Stipulation. The objection is pressed on petitioner's behalf. As already indicated in discussing the fraud issue, our determination of petitioner's fraud is based upon facts independent of those to which the objection is addressed. Nevertheless, since petitioner appears to feel that we may be influenced by knowledge of the indictment and bail forfeiture, we think he is entitled to a ruling. We overrule his objection for the following *331 reasons. The indictment and bail forfeiture occurred in relation to charges of income tax evasion for two of the years here involved. The essence of the charges has a direct relationship to the issue of fraud involved in the instant case. The conduct of the petitioner in his efforts to avoid the consequences of such charges may well give rise to an inference of consciousness of guilt on his part, and therefore may reflect upon his intent. We think the applicable principles are well established and we therefore content ourselves with a brief quotation from Jones on The Law of Evidence in Civil Cases (Third Edition, 1924) in which the author states (par. 287, p. 431): "Any indications which show or tend to show a consciousness of guilt by a person suspected or charged with crime or wrongdoing who may after such indications be suspected or charged are admissible evidence against him. Thus, flight, living under an assumed name, attempt to escape, resistance to arrest, concealment, failure to appear for trial when under bonds, are all facts which may tend to show consciousness of guilt, and are in common practice received in evidence as relevant." We may add that petitioner's counsel *332 referred to the indictment in cross examining Special Agent Granate, so that petitioner is hardly in a position to urge that the emergence of this fact was in any way prejudicial. As indicated, however, we think that fraud is clearly established as to each year on the basis of facts already discussed without any dependence upon inferences drawn from the indictment and bail forfeiture. Delinquency Penalties Respondent has also determined that petitioner is liable for delinquency penalties of 25% for failure to file returns for 1945 and 1946 pursuant to section 291(a) of the Internal Revenue Code of 1939. That section provides for such penalty in the case of any failure to make and file a return required by the statute within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect. The burden here is upon petitioner to establish reasonable cause for his failure to file. Joseph V. Moriarty, 18 T.C. 327. Petitioner did not testify at all, and we find no persuasive evidence in the record from which we might find that he had met his burden of proof. *333 We add that the explanation made by him in his transcribed interview with the special agent on October 15, 1947, is neither adequate nor worthy of belief. Moreover, since petitioner requested and obtained permission to file late returns for both 1945 and 1946, we find no reason to accept the view that his subsequent failures to file within the periods of extension were other than willful. Income Tax Deficiencies Petitioner concedes the correctness of the determination of the deficiency for the year 1942 (except as to fraud penalties which, as already indicated, are contested as to all years). He contends, however, that the determination of deficiencies in taxes for the years 1943 through 1946 are arbitrary, and therefore invalid, within the meaning of the principles expressed in Helvering v. Taylor, (1953) 293 U.S. 507. He argues, in part, that the determinations for these years were arbitrary because respondent did not determine larger allowances for labor costs for each year. Upon the record before us, we cannot agree with petitioner's position. For the years 1943 and 1944, respondent allowed petitioner the labor costs which he reported in the returns filed for *334 those years. For 1945 and 1946, respondent allowed those labor costs which could be substantiated by petitioner's cancelled checks, payroll records, and Social Security returns. There is no evidence in the record that petitioner paid labor costs in excess of the amounts determined by respondent for any of the years in question. If the actual costs were larger, petitioner has only himself to thank for his inability to substantiate them. He can hardly expect to shift to respondent the onus of his failure to make and keep adequate records. Since the burden of proof is on the taxpayer to show that the respondent's determination is in error (or, as here asserted, arbitrary within the rule of Helvering v. Taylor, supra), his burden has not been met and we must hold against his contention. Joseph V. Moriarty, supra. Petitioner further urges that respondent was arbitrary in his determination of the net profits realized by petitioner during 1945 and 1946. The amounts of gross receipts from sales for 1945 and 1946 were stipulated. In determining the excess of unreported gross receipts over unreported cost of merchandise for the years 1943 and 1944, respondent applied *335 percentages based upon the ratio of reported receipts at reported cost of merchandise in each year. Petitioner, in his interview with the investigating agent, acquiesced in this procedure. It appears to us to have been a reasonable approach in the interests of petitioner himself who was unable to substantiate any greater cost. In 1945 and 1946, however, there were no reported gross receipts or costs of merchandise and there were no records or other basis for the determination of a formula on figures for those years. Gross receipts were stipulated, however, and respondent, in determining the excess of such receipts over cost of merchandise, used the same ratio which he had used in 1944, the nearest year for which a ratio had been determined. This was 41.25852% of sales, and the resultant figures are set forth in our Findings of Fact for both 1945 and 1946. Under the circumstances, we think the determination by respondent was not only reasonable, but in the interests of petitioner who, through his own fault, was unable to substantiate any amount as representing cost of merchandise for 1945 and 1946. Again petitioner cannot seize upon his own misconduct as a basis for shifting his burden *336 to respondent. Respondent, on the other hand, used the only available technique for making his calculation. It is clear that Helvering v. Taylor, supra, does not support petitioner's contention. See Joseph V. Moriarty, supra.We hold, therefore, that respondent's determination was reasonable under the circumstances rather than arbitrary. Decision will be entered under Rule 50. Footnotes
1. An Income and Victory Tax Return was filed for 1943.↩